PRYOR, Circuit Judge,
specially concurring:
I concur in the majority opinion in all respects except for the reprimand of the prosecutor based on his comments in closing arguments about the reliability of Feli-ciano’s expert witness. The majority faults the United States for discrediting the expert’s opinion as based on the magnetic resonance imaging of Feliciano’s back from 11 years earlier. Although the majority declares that “[t]his conduct does not meet the standard we expect of United States prosecutors,” any disadvantage suffered by Feliciano based on the prosecutor’s closing arguments was not caused by the United States, but by the denial by the district court of Feliciano’s ex parte request for expert assistance.
Like the majority, I do not understand why the district court denied Feliciano’s request for magnetic resonance imaging at his expense, but I would not rebuke the United States for challenging the opinion of Feliciano’s expert as based on stale information. The United States made the very argument that it would have made had the district court granted Feliciano’s request for a new magnetic resonance imaging and had Feliciano’s expert then relied only on older medical information in testifying about his opinion. The majority assumes that a more recent magnetic resonance imaging would support Feliciano’s theory that he could not have leapt over the teller counter, but that assumption is unwarranted. After all, Feliciano’s cohort, Christopher Quinn, testified that Feliciano leapt' over the teller counter, as corroborated by surveillance images and the testimony of credit union witnesses. And an updated magnetic resonance imaging might have undermined the opinion of Fel-iciano’s expert, in which case the expert would not have relied upon it and the United States could have discredited his opinion on cross examination by asking the expert why he failed to account for it. The prosecutor would have been entitled to *1296 highlight in his closing arguments the deficiencies of the expert’s opinion, and the majority could not fault him for doing so.
Worst of all, the majority creates this argument about improper prosecutorial conduct out of thin air. Feliciano conceded at oral argument that it was not “unfair” for the prosecutor to argue that the defense expert relied on stale medical reports because “the die had been cast” when the district court allowed cross examination of Feliciano’s expert about those reports. Feliciano did not even object to these comments during closing arguments. And, on appeal, Feliciano complained instead that, in closing, the prosecutor misstated the evidence about eyewitness identifications and his physical appearance.
The majority also fails to explain why this conduct falls short of what we expect of federal prosecutors. It is easy to nitpick a prosecutor’s closing arguments. But, if we do so, we owe an explanation of why the comments were troubling and a legal citation to support that explanation. The majority neglects to do both and, as a result, fails to provide an articulable standard for prosecutorial conduct going forward. I reject the notion that, to undo any harm the district court caused by its own error, prosecutors must refrain from making proper arguments. Unlike the majority, I am not “troubled by what the government did here,” and I am baffled by what the majority hopes to proscribe in the future.